# The Southern Bank of St. Louis

*v.*

# George D. Humphreys *et al.*

1. Statutes—*construction of the statute relative to decrees against persons not personally notified.* A decree rendered under section 15 of the act entitled "Chancery," is but interlocutory, and does not become conclusive, until confirmed by the lapse of three years from the time of its rendition.

2. Decrees—*rights acquired under—where there has been no personal service on defendants—subject to be divested.* All persons acquiring rights under such decree, before it becomes final and conclusive, are equally affected with notice of its conditional character, and all interests so acquired, whether for a valuable consideration or otherwise, are entirely dependent upon the confirmation of the decree, and which, if vacated, renders all proceedings under it a mere nullity.

3. Chancery practice—*relative to proceedings allowing a party to answer—, under section 15 of act entitled " chancery."* Upon petition to be allowed to answer under section 15 of the act entitled "chancery," the correct practice is, to let the former decree stand until the final hearing, and then make such decree, either setting aside the former one and dismissing the bill, or confirming or modifying the same, as may be determined.

4. Same—*irregular practice in such case—cannot be attacked in a collateral proceeding.* Although the practice is irregular, for the court to set aside and vacate the former decree, upon the petition to be let in and defend, yet such irregularity cannot be attached in any collateral proceeding, and such decree setting aside and vacating the former decree, will be held binding, until reversed in a direct proceeding.

Appeal from the Circuit Court of Hancock county; the Hon. Joseph Sibley, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. Jackson Grimshaw and Mr. John H Williams, for the appellant.

Mr. N. Bushnell, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

It appears that in July, 1859, Samuel Leach and William W. Leach, each filed a bill in equity against George D. Humphreys and other parties, the object of each bill being to compel Humphreys to re-convey to the complainants respectively, the lands described in their several bills, which, it was alleged, had been conveyed to Humphreys as an escrow, and alleged to have been then held by him in violation of his contract. Defendants, Humphreys, the Morgans and Shepherd, were brought into court by publication. On a hearing at the October term, 1859, a decree was rendered that Humphreys convey the property described in the bill of Samuel Leach to him, and that he convey the lands described in William W. Leach's bill, to him, and if he should make default, that the conveyances be made by the master in chancery. Humphreys failing to convey, the deeds were made and reported by the master to the court at the March term, 1860, and approved.

Afterwards, William W. conveyed the property described in his bill to Samuel Leach, who subsequently executed a trust deed to Cornelius Fellows, to secure a debt of ten thousand dollars to Eli M. Bruce. The note evidencing this indebtedness, and the deed of trust given to secure its payment, were transferred to the Southern Bank of St. Louis by Bruce, and the bank thereby became the owner of these securities. That after these several transactions had occurred, at the October term of the court, Humphreys, the Morgans and Shepherd, having given notice, applied to the court and had the causes re-docketed, and the decrees were opened and set aside, and they permitted to answer the bills originally filed, and under which the decrees had been rendered and the master's deeds executed. On a hearing in May, 1866, both bills were dismissed.

On the 11th day of May, 1863, appellant filed this bill against appellees, to enforce its lien under the trust deed, claiming to have acquired the same in good faith and for value, and while the decrees and the deeds executed by the master to the Leaches were in full force, and that the lien of the bank was not affected by setting aside and vacating the decrees. Appellees, Humphreys, the Morgans and Shepherd filed an answer, insisting that appellant received the note and trust deed, subject to their prior lien, and not having been personally served with summons or notice in those cases, and, being nonresidents, their rights were not affected by the decrees or master's deeds, having availed themselves of the statutory right to file answers, and have the cause progress to a hearing. That the trust deeds executed by the Leaches to Humphreys, to secure the debts to the Morgans and Shepherd, was a prior lien to that of the bank, and was not affected by the decrees, master's deeds, the subsequent deed of trust to Fellows, or the assignment to the bank. Replications were filed and a hearing was had.

On a final hearing, at the May term, 1866, appellant's bill was dismissed, so far as it related to the lands embraced in the deeds of trust executed to Humphreys, to secure the debts to the Morgans and Shepherd, and decreed the relief sought, so far as it related to other lands embraced in the trust deed to Fellows. This appeal is prosecuted to reverse the decree dismissing that portion of complainant's bill.

The single question presented and relied upon in this case depends entirely upon the construction which shall be given to the 15th section of the chapter entitled " Chancery," (R. S. 95.) That section is this :

" When any final decree shall be entered against any defendant who shall not have been summoned or notified to appear, as required by this chapter, and such person, his heirs, devisees, executor, administrator, or other legal representatives, as the case may require, shall within one year after notice in writing given him or them, of such decree, or within three years after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree, and shall pay such costs as the court shall deem reasonable in that behalf, the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendant had appeared in due season and no decree had been made. The decree shall, after three years from the making thereof, if not set aside in manner aforesaid be deemed and adjudged confirmed against such non-resident defendant, and all persons claiming under him by virtue of any act done subsequent to the commencement of such suit, and at the end of the said three years the court may make such further order in the premises as shall be required and shall be just."

Appellant insists that the decrees rendered in favor of the Leaches were so far final as to fully protect subsequent purchasers, and that the subsequent proceedings had under this section did not affect the deed of trust they had acquired, and

notwithstanding the decrees were vacated and set aside, and the bills filed by the Leaches were dismissed on a final hearing, that their lien must be preferred to that of appellees. On the other hand, appellees insist that by a fair construction of this section, those decrees were but interlocutory, and that appellant took this lien subject to be defeated by the subsequent proceedings had, and authorized to be resorted to, under this section. That the lien did not become fixed and final, but qualified and conditional only, subject to be defeated by the result of the suits, under this section.

The language of this section does not, by any means, imply that the decree shall be final or conclusive. On the contrary, it provides that if the defendant shall apply to the court and show cause, within the limited period, he shall be permitted to answer the bill, and thereupon such proceedings shall be had as though the defendant had appeared in due season, and no decree had been rendered. This is not the language from which we can infer that the legislature intended the decree to be final or conclusive, or that rights acquired under it should not be divested. And the statute fails to save such rights.

Again, this section declares that if the decree shall not, after three years from the time when it was rendered, be set aside in the manner therein specified, it shall be deemed and adjudged confirmed against such non-resident defendants, and all persons claiming under them, and that the court may, at the end of that time, make such further order in the premises as shall be required and shall be just. If the decree was intended to be final, why declare that it should be adjudged confirmed after the lapse of three years, or why declare that the court might make such further order in the premises after that time?

This language would seem unmistakably to imply that until that time the decree should only be interlocutory; that all proceedings under it should be subject to the vacation of the decree; that until that time had elapsed without the decree

being opened, it and all acts under it should be considered as *in fieri;* that not only the decree itself, but all acts performed in executing it, should stand or fall with the decree.   If such was not the legislative intent, it would seem to be, at least, probable, that such rights would have been saved by the language of the act itself.

It may be said that this would work great hardship.   While this might be so, it is equally true that a different construction would be liable to produce as great wrong.   While the complainant is liable to be delayed in enforcing his rights, the defendant is equally liable to be wrongfully stripped of his property without actual notice, or the opportunity of defending his rights.   All persons will concede that it is necessary in the administration of justice, that some mode should be adopted by which non-residents should be rendered amenable to the action of our courts, to the extent that their property should be rendered liable to debts and obligations due to our citizens, and it rests alone upon the legislative power of the Government to provide the mode to be adopted for that purpose. And the general assembly might have prescribed a different mode of acquiring jurisdiction of non-resident defendants, and could have provided that such a notice, by publication, should be attended with a different effect from that prescribed.

It would hardly be contended that, as between the parties to the bill, after the decree was opened, complainant could assert any right under it.

In this case, it is, however, insisted that, although such might be the effect, as between the complainant and defendant, a purchaser from the complainant, or other subsequent grantee, for a valuable consideration, does not occupy the same position. If the provision contained in this statute had been inserted in this decree, giving to the defendants the same right to come in and be heard, and the same proceedings had taken place, as have been had, would any one suppose appellants were protected, or could enforce their deed of trust ?   It would then be

held that appellants were chargeable with the notice which the decree afforded, that it was not final, and was liable to be vacated in the manner provided. And, in such a case, we should unhesitatingly hold, that, with the vacating of the decree, the deed of trust and assignment to appellants would have fallen with the decree. And the same would be true under such a decree where there had been personal service. And it is because the party taking or dealing with the trust property, must be presumed to have examined the title, and if so, he would be chargeable with notice of the contents of the decree, and he would take, subject to its provisions, and in such a case, one of them would be, that the decree might be set aside in a particular mode, and within a limited period. And in what does this case differ, in principle, from those which we have supposed?

In this case, the decree was a matter of record, and formed a link in the chain of title through which Bruce claimed under the trust deed which he assigned to appellants. And we must presume that when the bank became the owner of the note and entitled to the benefit of the trust deed given to secure its payment, they examined the title, and if that was done, appellants saw the decree, and learned that it purported to divest apparent rights of non-resident defendants; also, that three years had not elapsed after the rendition of the decree, and being conclusively presumed to know the law, appellants knew that the steps could be taken under the statute which were subsequently had, and which are now being considered. This notice is as full, clear and explicit as if it had been spread out on the face of the decree itself. And we must, therefore, hold that appellants acquired their rights entirely dependent upon the confirmation of the decrees after the three years had expired. Until that time, the decrees were but interlocutory, and the deeds under them, and all subsequent transfers, were liable to be defeated by the setting aside of the decrees. In the case of *Lyon* v. *Robbins*, 46 Ill. 276, we have taken the same view of this

30—47th Ill.

section as we have expressed in this case, in determining the time when a bill' of review must be filed, to impeach such a decree.

It is, however, insisted that the court below did not defeat or impair the rights of appellants by opening the decree, and setting it aside; that the sales and conveyances could not be affected in that manner. It is, no doubt, true that it was irregular for the court to set aside and vacate the decree upon the petition to be let in to answer and defend. The correct practice is, to let the decree stand until the final hearing, and if it then appear that the defense has been made out, the court should render a decree setting aside the former decree and dismissing the bill. But if, on the contrary, it should then appear that the complainant is entitled to the relief sought and formerly decreed, then the final decree should confirm the decree formerly rendered. Or, if entitled to part only, modify the previous decree by confirming the portion affording proper relief, and vacating and annulling so much as might appear to be improper.

This case, however, was not heard until the other had been tried and the bill dismissed. And the proceedings in that case were read in evidence on the hearing in this. It, then, appeared, that the decree in the other cases had not only been vacated and set aside, but on a final hearing, the relief prayed, was refused, and the bills dismissed. While, perhaps, informal, the same end was attained. The parties were before the court, and the cause was properly on the docket, and pending in the court; and although it may have been irregular to render such a decree at that time, still, the court having jurisdiction, the decree was not void, and must be held binding until reversed in a direct proceeding. It cannot be attacked in this or any other collateral proceeding. And we must hold that there is no error in this record, and the decree of the court below must be affirmed.

*Decree affirmed.*