**Edith LaMont Wheeler Caldwell Chapman et al., Appellants, v. Northern Trust Company, Trustee under last Will and Testament of Louise C. Bigelow, Deceased, Appellee.**

**Gen. No. 26,682.**

1. JUDGMENT, § 1*—*what is effect of statutes as to judgments and orders.* As a general proposition all orders, judgments and decrees are made in view of the statutory law, if there be any, governing or regulating the proceeding in which they are entered.

2. APPEAL AND ERROR, § 271*—*when decree is final.* A decree was not provisional or conditional but final and subject to review, notwithstanding that certain defendants domiciled in Germany and Austria, as to whom it was claimed that by reason of a state of war still technically existing with those countries, the chancery court did not obtain jurisdiction in virtue of the 3-year limitation in section 19 of the Chancery Act (J. & A. ¶ 899), and, that such court could not obtain jurisdiction until the war ceased.

3. WAR, § 6*—*what is effect of domicile of alien enemies as to civil remedies.* No alien enemy can, during the existence of a state of war, obstruct, by his absence in enemy country, the operation of our laws as to the rights of citizens domiciled within the State, but such citizens may invoke such laws and enforce judgments and decrees relating to them, subject to the right of legal challenge when peace has been restored.

4. JUDGMENT, § 6*—*what is effect of decree as to protection of trustee thereunder.* A trustee would be protected in making distribution in faith of the verity of a decree while it remained in force and unreversed, notwithstanding there were defendants who were served by publication who had preserved to them their right to be heard to contest the bill within the 3 years given them for that purpose by section 19 of the Chancery Act (J. & A. ¶ 899), and might do so successfully.

5. JUDGMENT, § 6*—*when decree protects person paying money thereunder.* A decree is a protection to a person paying out money in pursuance of its directions.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded with directions. Opinion filed November 22, 1920.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

FISHER, BOYDEN, KALES & BELL, for appellants.

WALTER B. WOLF, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This cause comes to this court by transfer from the Supreme Court, to which it was taken by appeal, the Supreme Court holding that no freehold was involved and that no other ground for appealing to that court appeared.

The case will be found reported in 294 Ill. 383, where a sufficient statement of the case appears and to which we refer without repeating the same in this opinion.

The question presented for our solution is clearly stated by the Supreme Court in case *supra* in the following apt language:

"The question raised by this case is whether it is the duty of the trustee now to obey the order to distribute the income from one-third of the trust estate to the children of Josephine, and whether it would be protected in doing so if, within the 3 years allowed by the statute, the decree should be set aside and a different construction given the will."

The Supreme Court opinion further states that:

"Appellants contend the trustee would be protected in obeying the decree, and that if it should be later determined that the decree was erroneous the remedy of those injured by paying income pursuant to the original decree would be against those, only, who received money or property under it which they were not entitled to. Appellee contends, and the chancellor sustained its contention, that section 19 is as much a part of the decree of April 6, 1920, as if incorporated in the decree, and that as to nonresident defendants served by publication, only, the decree was provisional and will not become final until the expiration of 3 years, and would afford no protection to the trustee in distributing the income until it becomes final."

And further says that "the controversy is whether they can compel the trustee to pay it to them now or whether they must wait 3 years for it."

The question as thus presented for our decision is by no means free from difficulty. The precise question before us has not in its present form been directly passed upon by our Supreme Court. We are therefore left to make application of the law, as it has been expounded in jurisdictions without this State, and particularly to determine how far, if at all, the English chancery cases and the rules in such cases laid down are controlling in this case.

Counsel for the trustee insists that section 19 of our Chancery Act (J. & A. ¶ 899) providing for bringing in nonresident parties by publication must in contemplation of law be treated as if embraced in the decree, in which contention the learned chancellor concurred. While this contention may be correct, it by no manner of means follows that it is decisive of the dispute in the case. It may be stated as a general proposition that all orders, judgments and decrees are made in view of the statutory law, if there be any, governing or regulating the proceeding in which they are entered.

It is likewise urged that in view of section 19, *supra,* the decree of April 6, 1920, ordering the trustee to pay certain income to complainants, has not the essence of finality, but until the 3-year limitation in section 19 expires, it is in suspension and not enforceable against the trustee; or, in other words, until such time elapses the decree is *nisi* and not absolute.

The trustee raises another rather novel question, unsupported by any authority in this State, which is, that as to the defendants domiciled in Germany and Austria, owing to a state of war existing between those countries and ours and which in a technical sense still continues, the provision of section 12 of the Act, *supra* (J. & A. ¶ 892), was impossible of performance by reason of noncommunication by mail between these coun-

tries, depriving such defendants of access to our courts; that consequently the chancery court did not acquire jurisdiction over them in virtue of section 19, *supra,* and cannot obtain jurisdiction until after such state of war ceases.

This latter proposition, lacking binding authority in this State, we must deal with as one of first impression.

We cannot conceive it to be the law anywhere that the rights of a citizen shall be held in suspension and unenforceable in our courts, because some alien enemies, domiciled within enemy territory, and therefore not accessible for the service of process, may have some interest subject to adjudication in our courts. If such were the law it would work an injustice to our own citizens for the benefit of the country's enemies by depriving the citizen of the benefit of the remedial relief to which he may be entitled by the law of the State. It would seem consistent and logical to hold, as we do, that no alien enemy can, during the existence of a state of war, obstruct, by his absence in enemy country, the operation of our laws as to the rights of citizens domiciled within the State, but that such citizens may invoke such laws and enforce judgments and decrees relating to them, subject to the right of legal challenge when peace is restored between the warring countries.

It is manifest that the decree of April 6, 1920, was not provisional or conditional, but final, and subject to review on appeal or writ of error.

In a measure divorce decrees entered on publication notice to the defendant are in their nature *nisi* until the 3-year limit of the right to appear and contest the decree as provided in section 19, *supra,* has passed, when for the first time such decree becomes absolute. Divorce decrees are not comparable to the April 6, 1920, decree in this case. In divorce cases the State is a third party, and persons so divorced who proceed

to treat the decree as final by again marrying do so at their peril.

We will now attempt to decide the main question submitted, as to whether the trustee, should it obey the decree and pay out the income as by that decree directed, would be protected against a successful attack by nonresident defendants not personally served with process in a proceeding contemplated by section 19 of the Chancery Act, *supra.*

While the defendants served by publication have preserved to them their right to be heard to contest the bill within the 3 years given them for that purpose by section 19, *supra,* and may do so successfully, would the trustee be protected for payments made by it in faith of the verity of the decree while it remained in force and unreversed? Or does the doctrine laid down in *Lawrence v. Lawrence,* 73 Ill. 577; *Southern Bank of St. Louis v. Humphreys,* 47 Ill. 227, and other like cases in this State apply to the trustee defendant so that it would be liable to the defendants served by publication for moneys paid out under the decree should any of them succeed in an attack upon the decree? In such a proceeding, should the decree be reversed or varied, would the defendant who prevailed be relegated for recovery to the party to whom the trustee had made payment, or to the trustee?

The distinction is attempted to be made in this regard between a proceeding *in rem* and one *in personam,* and it is contended that in the instant case the proceeding culminating in the decree of April 6, 1920, is *in rem.*

In this State the English chancery practice is the rule of procedure in equity courts. It is therefore not inappropriate to apply such practice to the decision of equity cases within this jurisdiction, and, unless the same has been changed by statute or the dicta of our courts, should be followed as binding authority. In 2

Perry on Trusts (6th Ed.), par. 928, this text-writer states the doctrine thus:

"The trustee himself will be protected by the decree of any court having jurisdiction, and exercising the jurisdiction regularly upon proper notice given. * * * The suit in such cases may be instituted by the trustee himself asking for the direction of the court; or parties claiming to be the *cestuis que trust* may institute the suit against the trustee, and others claiming to be the *cestuis que trust.* * * * But if parties receive the money who are not entitled, they are not protected, although the trustee paid the money to them under a decree of the court, and is protected personally by the decree. In such cases the party really entitled, if he was not a party to the previous suit, and bound by the decree, may have his suit against the person to whom the money was paid, and he will be held as a *quasi* trustee in favor of the person who shows an absolute right to receive the money."

2 Daniell's P. & P. (1st Ed.) 859-860, states the rule of the court to substantially the same effect as Perry, *supra,* and in treating of the remedy of those claiming *dehors* the decree for moneys paid to others, and which they claim as of right to be theirs, states that:

"Such a suit, however, can only, after a distribution under a decree, be filed against the parties who have partaken of the distribution; it cannot be filed against the executor, or administrator, or other person who has acted under the direction of the court in distributing the fund, for the court will not permit a party, who has acted in pursuance of its decree in distributing a fund, to be afterwards charged for what he has done pursuant to its directions."

This rule is adhered to in the 8th (1914) edition of Daniell's *supra.* Supporting this text is *Farrell v. Smith,* 2 Ball & Beatty 337, where a party was brought in by publication pursuant to the rules of the court, but did not appear. A decree of distribution was rendered and made under it. Subsequently a beneficiary

under the will, who was not a party to the suit in which the decree was entered, had not appeared and was not guilty of laches, filed a bill against the executor of the will and claimed her distributive share, to which it was conceded she was entitled. However, the Lord Chancellor dismissed the bill, saying:

"It appears to me that nothing could possibly be more injurious to the administration of justice in this court than to grant the relief sought in this case by the plaintiff; indeed I have never heard of a bill like the present, and I am sure no precedent can be produced in support of it; for what executor would be safe, if he were liable to answer for a distribution of assets, made under a decree of the court? The bill should have been to reverse the decree  *  *  *  as erroneous; for it has been brought, not in fact to set aside what the executor has done, but what the court has done in the usual course of proceeding, acting in the best possible manner.  *  *  *  In *Pooley v. Ray,* Lord Cowper puts the case of an executor, who having obtained a decree for a sum of money due to his testator, paid it away amongst the creditors, and on an appeal the decree was reversed; if the defendant had delayed the appeal, Lord Cowper conceived that the executor would not be liable to repay the money. How much stronger is the present case, where the payment of the money has not been the act of the executor, but of the court.  *  *.  *  Where this court has taken the management of assets from the executor into its own hands, it will not permit him to be charged for what has been done in pursuance of its directions."

This principle was followed in *Brooks v. Reynolds,* 1 Brown's Chancery Cases, 183; 2 Dick. 603, in which an executor after distributing the estate under the decree was sued at law by a creditor, of which suit he sought to restrain the prosecution, and Lord Thurlow said:

"The reason why the injunction is granted is this— that this court having taken the fund into its own

hands, will not permit the executor to be pursued at law.''

And in *Kenyon v. Worthington,* 2 Dick. 668, Lord Thurlow said:

''The court will surely protect the executor or administrator in obeying its decrees.''

*Gillespie v. Alexander,* 3 Russ. Ch. 130, was the case of a creditor who attempted to prove his claim after a decree of distribution had been entered, and after the executor had paid out the residue. The court held that while the creditor was not without remedy to sue the legatees and bring back the fund, he could not affect the legatees except by suit, and Lord Eldon stated that ''he cannot affect the executor at all.''

In *Foster v. M'Mahon,* 11 Irish Eq. Rep. 287, where it was held that a bill by a distributee not a party to the previous suit might be had against the parties to whom distribution had been made under the former decree for a refund, the Lord Chancellor said:

''It is then urged that the plaintiff is seeking to overturn what has been done in another court, and that that would be unjust to those who have acted under the supposition that what was done was right. That would be of force if the plaintiff was going personally against the representative of Charles M'Mahon, for if you allow a trustee or executor to act under a decree of a competent court you cannot make him responsible for what he has done under that decree. But it is a different thing as against a party who gets money which was not his or hers, and who remains still liable if he takes it.''

*Loring v. Steineman,* 1 Metc. (Mass.) 204, announces the same doctrine as cases *supra. Exton v. Zule,* 14 N. J. Eq. 501, in which *inter alia* the court said:

''It must be borne in mind that, though the decree for distribution is a judicial determination of the rights of the parties, the proceeding to obtain it is not in the nature of a suit between party and party, in which one seeks to recover a right withheld by the other. There is no *actor et reus,* plaintiff and defend-

ant in the proceeding. It is analogous in its character to a proceeding in admiralty or other proceeding *in rem,* in which a decision between the parties before the court settles the rights of all the parties to the property in question. *Scott v. Shearman,* 2 Bl. Rep. 979; *Elkins v. Smith,* Raym. 336; 13 Vin. Ab. 95, Evidence A, b. 22; *Gelston v. Hoyt,* 13 Johns. (N. Y.) 579; *Geyer v. Aguilar,* 7 D. & E. 796; *Loring v. Steineman,* 1 Metc. (Mass.) 208.''

This case follows the doctrine announced in cases *supra* that the decree is a protection to a person paying out money in pursuance of its directions. *Sayre v. Sayre,* 16 N. J. Eq. 505.

The course of equity procedure in England regarding trusts has been materially changed by an act of the English Parliament by what is known as the Trustee's Act of 1893, under section 42 of which a trustee haled into court may bring the trust fund into court and be discharged from further responsibility. However salutary this act may be, it has no bearing upon the procedure in trust matters in our equity courts, as while that act changes equity procedure in England, it does not even remotely disturb the usual course which prior to that act obtained in England, and still does obtain in this State. The decree of the chancellor is just as much of a protection to the trustee as if the same had been affirmed upon an appeal to the Supreme Court. The reason for this is made clear in *Rissman v. Wierth,* 244 Ill. 95, in which the decree was affirmed by the Supreme Court, but afterwards opened under section 19, *supra,* and a decree entered contrary to the former decree, and which latter decree was subsequently also affirmed by the Supreme Court.

Furthermore, it is not ethically the duty of the trustee to appeal. We do not think it is the policy of the law in the interest of parties nonresident belligerents to restrain the courts from giving relief in an

appropriate action to a citizen resident within such jurisdiction and thereby to postpone indefinitely in some instances the assertion of and procuring from the domestic courts an adjudication of such rights.

The contention of the trustee in this regard would, if made effective in the instant case if carried to its logical conclusion, bring about a long postponement of the rights of the parties adjudged to be entitled to certain portions of the income from the trust estate and deprive them of reaping any benefit under the decree for years to come. Owing to a state of war existing between this country and Germany and Austria, the defendants resident in the two latter countries and against whom publication has been had, could not be proceeded against until that state of war is ended and peace declared. Then, when our courts are made accessible to the residents of countries at war with us, they may proceed with the cause. After decree the defendants served by publication would have 3 years under section 19, *supra*, to appear and contest the bill in the same manner as if a decree had not been rendered. Some of such defendants are minors. The years of their minority yet remaining would to that extent be added to the 3-year period provided by section 19, *supra*. During all of such time the resident citizen would be deprived of the right of enforcing his claim to property situated within the jurisdiction of the court and the several sums due him be allowed to accumulate until such time as the state of war ceased and some minor, brought into the courts by publication, attains his majority with 3 years added in which to appear and contest the verities of the proceeding.

If such be the law, which hardly seems possible, the rights of such nonresident persons would seem to be unduly protected, while the rights of the resident citizen would be unduly neglected and greatly impaired.

We hold that the proceeding terminating in the decree of April 6, 1920, was one *in rem* and that the trust

fund thereby was brought into the chancery court for such order and disposition as it might by decree direct, and that the decree is binding upon the trustee and is a protection to the trustee for any money which it may lawfully pay out to the parties as in said decree directed; and, as said in *Wilson v. Board of Regents,* 46 Colo. 100:

"The order of the court below is a full and complete protection to the executor for whatever he may do, by way of disposition of the property, within its terms." *Merrick v. Kennedy,* 46 Neb. 264.

The rule regarding actions *in rem* is of equal application to executors, administrators, trustees, and others who act in a fiduciary capacity and are in law trustees of the funds and property which they hold to be distributed to the beneficiaries under the trusts under which such property may be held.

It is our opinion that the complainants are entitled to the relief prayed, and the decree of the circuit court is therefore reversed and the cause is remanded to that court with directions to enter a decree granting the relief prayed for in the bill and directing the trustee, The Northern Trust Company, to forthwith pay the income from the Bigelow estate as directed by the decree of April 6, 1920.

*Reversed and remanded with directions.*

DEVER and McSURELY, JJ., concur.