(No. 13775.—Judgment affirmed.)

EDITH LAMONT WHEELER CALDWELL CHAPMAN *et al.* Appellees, *vs.* THE NORTHERN TRUST COMPANY, Trustee, Appellant.

*Opinion filed February 15, 1921.*

1. TRUSTS—*trustee distributing funds by order of court is protected against setting aside of decree under section 19 of Chancery act.* A trustee directed by a court having jurisdiction, to pay over the funds in its hands to the distributees in accordance with the directions of the decree construing the trust provisions of the will, will be protected in so doing against suits to set aside the decree, brought under section 19 of the Chancery act by defendants served by publication, even though as between the other parties the decree is set aside.

2. SAME—*effect where part of defendants reside in country at war with United States.* The fact that some of the defendants to a proceeding to construe a will reside in a country which is at war with the United States does not preclude the prosecution of the proceeding in a court of chancery nor suspend the operation of the statutes providing for notice by publication so as to deprive the court of jurisdiction.

3. SAME—*affording protection to a trustee against suits is not contrary to constitution.* The policy of affording to a trustee who distributes funds in accordance with an order of a court having jurisdiction, protection against suits brought under section 19 of the Chancery act by persons served by publication to set aside the decree, is not contrary to the provisions of the Federal and State constitutions as to due process of law.

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

JUDAH, WILLARD, WOLF & REICHMANN, for appellant.

FISHER, BOYDEN, KALES & BELL, (ALBERT M. KALES, FRANCIS H. BOHLEN, ROSWELL B. MASON, and WILLIAM K. OTIS, of counsel,) for appellees.

296—23

Mr. JUSTICE CARTER delivered the opinion of the court:

·Appellees filed a bill in the circuit court of Cook county to construe the will of Louisa G. Bigelow, upon which the court entered a decree April 6, 1920, finding the shares of the testatrix's three grandchildren which should be distributed by the trustee, the Northern Trust Company. Upon the failure of the trustee to carry out that decree the present proceeding was started April 23, 1920, in the circuit court of Cook county, asking the court to put into immediate effect the prior decree. Because the service on certain defendants in the first mentioned case was by publication, when the trustee answered the bill in the latter case it averred that it would not be protected if it distributed the property according to the decree theretofore entered, and upon the trial with that as the issue the bill was dismissed for want of equity. The appellees here appealed to this court. The cause was transferred to the Appellate Court on the ground that there was no question involved authorizing a direct appeal to this court. (*Chapman* v. *Northern Trust Co.* 294 Ill. 383.) The Appellate Court thereafter reversed the decree and remanded the cause to the circuit court, directing that the relief prayed for in the bill be granted and that appellant, the Northern Trust Company, pay the income as prayed for in the bill. A certificate of importance was granted by the Appellate Court and the cause has been brought here on appeal for further consideration.

The facts were set forth at some length in *Chapman* v. *Northern Trust Co. supra,* and will not be re-stated here in detail.

° Louisa G. Bigelow, it appears, died testate in 1873, creating by her will a trust estate, consisting chiefly of real estate, for the benefit of three grandchildren. Her will was construed in the courts of Cook county, all the persons interested being made parties by service of process or by publication. Such proceedings were had that on April 6, 1920, a decree was entered construing the will and grant-

ing the relief prayed for and ordering that the proceeds to which complainants were entitled should be paid them immediately. No appeal was taken from that decision, but the appellant trustee refused to obey the decree to pay over the income to the complainants on the ground that it would not be protected in doing so, basing its objection upon the ground that under section 19 of the Chancery act those parties who were served in the original proceedings by publication would have three years in which to appear and secure a new hearing for the purpose of setting aside the decree and having a different construction given the will, in which event the trustee might become liable to pay the income over again to other parties.

Section 19 provides as follows: "When any final decree shall be entered against any defendant who shall not have been summoned or been served with a copy of the bill, or received the notice required to be sent him by mail, and such person, his heirs, devisees, executor, administrator or other legal representatives, as the case may require, shall, within one year after notice in writing given him of such decree, or within three years after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree, and shall pay such costs as the court shall deem reasonable in that behalf, the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendants had appeared in due season and no decree had been made. And if it shall appear, upon the hearing, that such decree ought not to have been made against such defendant, the same may be set aside, altered or amended as shall appear just; otherwise the same shall be ordered to stand confirmed against said defendant. The decree shall, after three years from the making thereof, if not set aside in manner aforesaid, be deemed and adjudged confirmed against such defendant, and all persons claiming under him by virtue of

any act done subsequent to the commencement of such suit; and at the end of the said three years, the court may make such further order in the premises as shall be required to carry the same into effect." (Hurd's Stat. 1919, p. 206.)

It is argued by counsel that unless the provisions of the Chancery act of this State govern and control here the English chancery practice on this question should be followed.

Counsel for appellees insist that section 19 does not attempt to regulate the practice in a case such as is here before us, and that under the English practice in such matters the trustee would be authorized and protected and would be compelled to follow the direction of a court of chancery as to the payment of such funds. In Perry on Trusts (vol. 2, 6th ed. sec. 928,) it is stated: "The trustee himself will be protected by the decree of any court having jurisdiction and exercising the jurisdiction regularly upon proper notice given. * * * The suit in such cases may be instituted by the trustee himself asking for the direction of the court, or parties claiming to be the *cestuis que trust* may institute the suit against the trustee and others claiming to be the *cestuis que trust*. * * * But if parties receive the money who are not entitled they are not protected, although the trustee paid the money to them under a decree of the court and is protected personally by the decree. In such cases the party really entitled, if he was not a party to the previous suit and bound by the decree, may have his suit against the person to whom the money was paid, and he will be held as a *quasi* trustee in favor of the person who shows an absolute right to receive the money." The same doctrine on this subject was set forth in Daniell's Chancery Pleading and Practice, (vol. 2, 1st ed. p. 859,) where the author states: "Such a suit, however, can only after a distribution under a decree be filed against the parties who have partaken of the distribution. It cannot be filed against the executor or administrator or other person who has acted under the direction of the court in distribut-

ing the fund, for the court will not permit a party who has acted in pursuance of its decree in distributing a fund to be afterwards charged for what he has done pursuant to its directions." This rule was approved in 1 Daniell's Chancery Pleading and Practice, (8th ed.) 899.

Apparently in stating this rule reliance was placed upon the holding of the court in *Farrell* v. *Smith*, 2 B. & B. 337, where the Lord Chancellor stated: "It appears to me that nothing could possibly be more injurious to the administration of justice in this court than to grant the relief sought in this case by the plaintiff. Indeed, I have never heard of a bill like the present and I am sure no precedent can be produced in support of it, for what executor would be safe if he were liable to answer for a distribution of the assets made under a decree of the court? The bill should have been to reverse the decrees in 1802 and 1803 as erroneous, for it has been brought, not, in fact, to set aside what the executor has done but what the court has done in the usual course of proceeding, acting in the best possible manner. * * * In *Pooley* v. *Ray*, Lord Cowper puts the case of an executor who having obtained a decree for a sum of money due to his testator, paid it away amongst the creditors and on an appeal the decree was reversed. If the defendant had delayed the appeal Lord Cowper conceived that the executor would not be liable to re-pay the money. How much stronger is the present case, where the payment of the money has not been the act of the executor but of the court! * * * Where this court has taken the management of assets from the executor into its own hands it will not permit him to be charged for what has been done in pursuance of its directions." This same doctrine was enforced by Lord Thurlow in *Brooks* v. *Reynolds,* 1 Brown's Ch. 183, (2 Dick. 603,) the opinion saying in part: "The reason why the injunction is granted is this: That this court having taken the fund into its own hands will not permit the executor to be pursued at law." The

same rule was enforced in *Dougles* v. *Clay,* 1 Dick. 393; *Kenyon* v. *Worthington,* 2 id. 668; *Gillespie* v. *Alexander,* 3 Russ. Ch. 130; *Foster* v. *McMahon,* 11 Irish Eq. 287.

The above doctrine has received the approval of the courts in various jurisdictions in this country. In *Loring* v. *Steineman,* 42 Mass. 204, in an opinion by Chief Justice Shaw, it was said: "We can entertain no doubt that the judgment of a probate court duly made after such notice. as the statutes require, or if they require no notice, then after such notice as the court in its discretion, acting upon the circumstances of the case, may think proper to order, must be deemed in its nature so far conclusive as to protect an administrator, acting in good faith, in conforming to it. The distribution of an intestate estate is within the peculiar and exclusive jurisdiction of the probate court, exercising in this respect the jurisdiction of the ecclesiastical courts. * * * But it is said that in order to give a binding effect to a judicial decision the court must have jurisdiction of the subject matter and of the parties. The latter part of this proposition applies more especially to a contest between party and party as to real or personal rights, but in many cases courts of peculiar jurisdiction have jurisdiction of the subject matter absolutely, and persons are concerned incidentally, only, according to their respective rights and interests, as, in a question of prize the jurisdiction of the court of admiralty extends to the question whether prize or not, and by adjudicating upon that question settles it definitely in regard to all persons interested in that question, whether they have notice or not. And we think the distribution of an intestate estate is analogous. The subject matter,—the property,—is within the jurisdiction of the court, and the judgment, by determining who are entitled to distributive shares and extending to the entire estate, determines that no other persons are entitled and is necessarily conclusive. * * * The persons interested, especially when foreigners, cannot be brought before the

court unless they choose to present themselves and make their claims upon such actual or constructive notice as the law requires."

Again, in *Exton* v. *Zule*, 14 N. J. Eq. 501 the matter was discussed, it being urged that a person whose rights were to be affected should be a party to the proceeding and should have an opportunity of being heard. On this question the court said: "This is believed to be the limit of the doctrine applied to suits between party and party, either at law, in equity or in the ecclesiastical courts. This brings us to the pith of the controversy in this case: How far does this doctrine apply to and affect a decree for the distribution of an intestate's estate? * * * It must be borne in mind that though the decree for distribution is a judicial determination of the rights of parties, the proceeding to obtain it is not in the nature of a suit between party and party, in which one seeks to recover a right withheld by the other. There is no *actor et reus,* plaintiff and defendant, in the proceeding. It is analogous in its character to a proceeding in admiralty or other proceeding *in rem,* in which a decision between the parties before the court settles the rights of all parties to the property in question. * * * On the settlement of an administrator's account there is a fund in court, or in the hands of an officer under the control of the court, which is to be disposed of under its direction. It is a question between the next of kin. They, alone, are interested in having it decided. The administrator, as such, has no interest in the question. He is simply to obey the order of the court and to act as its agent in carrying the decree into effect. He is a trustee acting under the sanction and by the authority of the court. * * * The same course is adopted in regard to the disposition of funds paid into the court of chancery in the progress of suits in equity."

Again, in *Sayre's Admr.* v. *Sayre,* 16 N. J. Eq. 505, the court said (p. 509): "The decree is undoubtedly final

and conclusive between the administrator and the distributees as to the amount of each share and as to the party entitled to receive it. Thus, in an action against the administrator for the recovery of a distributive share it would be conclusive evidence of the amount to which the plaintiff is entitled. So the decree would be an effectual protection to the administrator against all claims for moneys paid pursuant to the decree, although it should prove that the decree was erroneous and the money paid to a party not entitled. The remedy in such case by a party who has been deprived of his rights by the decree is not against the administrator but against the distributees who have wrongfully received the estate. In their favor, as against the rightful claimant, the decree would not operate."

In *Fraser* v. *Page,* 82 Ky. 73, the opinion states (p. 76) : "They [the trustees] were compelled to obey the judgment of the court to which they had gone for advice. * * * Having the right to apply to a court of equity for such a purpose, it would be a singular rule that would adjudge the fiduciary liable by reason of an erroneous judgment by the court whose aid it was not only his right but his duty to invoke."

In *Minor* v. *Purrington,* 190 Mass. 336, the court said (p. 341) : "We are of opinion that this decree of the probate court was effectual and binding upon the parties in its operation upon that portion of the fund which was distributed under it. * * * To make a valid decree for the management and distribution of the trust fund it was not necessary that the court should obtain jurisdiction of every person interested in it by making personal service upon each, such as would be necessary for the maintenance of an adversary suit *in personam.*"

Our attention has been called to no well considered authority which reaches a contrary conclusion on this specific subject. This doctrine was in force in the equity courts of Great Britain before this State was organized, and most

of the English authorities above cited were decided before the first Illinois constitution was adopted.

Counsel for appellees argue that the principles laid down in the authorities cited control here unless they have been altered or changed by statutes of this State, and that the court will look in vain to sections 7, 12 and 19 of the Chancery act, which provide for service by publication and the effect thereof, for any suggestion of a change in the law regarding the jurisdiction of the court of equity when it is exercised *in rem;* that the apparent purpose of the provisions of said sections as to the rights of parties who were notified by publication is largely, if not entirely, permissive; that section 19 of the act does not specify who must be made defendants or who must be served with process before a court of equity can act and before the court's decree will be a protection to the trustee; that said section, as well as the other sections mentioned, leaves unimpaired the jurisdiction of the chancery court *in rem,* and that under a fair construction of section 19, if a court of equity before that section was enacted could enter a decree, in the exercise of its jurisdiction *in rem,* ordering the distribution of an estate in its hands by means of a trustee, without making as a party by personal service a person interested who could not be found in the State, and if such decree would protect the trustee before, then such decree will equally protect the trustee since the enactment of said section, and the right of defendants to open up such a decree is a right to do so merely for the purpose of enabling them to pursue the party to whom distribution has been made by the trustee under the order of the court; that no modification of the jurisdiction of the equity court is to be found in the statutes; that these statutes make no additional requirements as to who must be made parties defendant, and do not make any attempt to provide that the jurisdiction of a court of equity in an action *in rem* will be ousted in any particular; that the arguments of counsel for appel-

lant that under sections 12 and 19 of the Chancery act non-resident defendants are accorded rights which they did not have before these statutory provisions were enacted as to service upon them are without merit; that giving the fullest possible effect to the provisions of section 19, it merely permits non-resident defendants to enter appearance and answer and set aside the decree as a necessary preliminary to the pursuit of the trust *res* in the hands of the distributee or as preliminary to a suit against him for money had and received. Counsel for appellees rely upon the legal proposition that where a bill is filed for the distribution and disposition of a trust estate, the disposition of such estate is thereby placed in the control of the chancery court, and that when the court by its acts makes distribution through directions to the trustee, the court, and equally the trustee, is protected when a party served by publication appears, as he has a right to do under section 19 of the Chancery act, and that counsel for appellant cannot meet this argument, and the authorities in support thereof, by quoting from authorities which hold that as between party and party the decree, when set aside, is as if it had never been, so far as concerns the party in whose favor it was originally obtained.

In *Hollingsworth* v. *Barbour,* 4 Pet. 466, the court said (p. 472): "By the general law of the land no court is authorized to render a judgment or decree against anyone or his estate until after due notice by service of process to appear and defend. This principle is dictated by natural justice, and is only to be departed from in cases expressly warranted by law and excepted out of the general rule." And again, on page 474: "It is an acknowledged general principle that judgments and decrees are binding only upon parties and privies. The reason of the rule is founded in the immutable principle of natural justice that no man's right should be prejudiced by the judgment or decree of a court without an opportunity of defending the right. This

opportunity is afforded, or supposed in law to be afforded, by a citation or notice to appear, actually served, or, constructively, by pursuing such means as the law may in special cases regard as equivalent to personal service. The course of proceeding in admiralty causes, and some other cases where the proceeding is strictly *in rem,* may be supposed to be exceptions to this rule. They are not properly exceptions. The law regards the seizure of the thing as constructive notice to the whole world, and all persons concerned in interest are considered as affected by this constructive notice. But if these cases do form an exception, the exception is confined to cases of the class already noticed, where the proceeding is strictly and properly *in rem* and in which the thing condemned is first seized and taken into the custody of the court. * * * Constructive notice, therefore, can only exist in the cases coming fairly within the provisions of the statutes authorizing the courts to make orders of publication, and providing that the publication, when made, shall authorize the courts to decree."

In the case of *The Mary,* 9 Cranch, 126, in an opinion by Chief Justice Marshall, it is said (p. 144) : "The whole world * * * are parties in an admiralty cause, and therefore the whole world is bound by the decision. The reason on which this dictum stands will determine its extent. Every person may make himself a party and appeal from the sentence; but notice of the controversy is necessary in order to become a party, and it is a principle of natural justice of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice, either actual or implied, of the proceedings against him. Where these proceedings are against the person, notice is served personally or by publication; where they are *in rem,* notice is served upon the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is the part of common prudence for all those who

have any interest in it, to guard that interest by persons who are in a situation to protect it." This reasoning as to notice to all parties interested in the *res* of the property taken into the custody of the court applies with full force to the property in the custody of the court which was ordered to be distributed by its officer, whether an administrator, executor or a trustee.

Counsel for appellant insist that this court has considered section 19 of the Chancery act in such a way as to require that section to apply in a proceeding of this kind, relying in support of this argument largely upon the reasoning of this court in *Southern Bank* v. *Humphreys,* 47 Ill. 227, *Martin* v. *Gilmore,* 72 id. 193 and *Lawrence* v. *Lawrence,* 73 id. 577. In all of these cases, as we read them, the equity court was not exercising jurisdiction *in rem.* Those decrees were each *in personam,* entered for a specific purpose against the person of the defendant, who was served only by publication. The court rightly held that under such conditions the provisions of section 19 applied, but the reasoning of those cases entered under such circumstances is not controlling here. The principles settled in the cases relied on by appellant are analogous to the cases decided by this court where it has been held that the court will not decree specific performance against a non-resident who has been served only by publication. (*Fowler* v. *Fowler,* 204 Ill. 82; *Snell* v. *Hill,* 263 id. 211.) The reasoning of this court in *Heinroth* v. *Frost,* 250 Ill. 102, and particularly in *Therens* v. *Therens,* 267 Ill. 592, shows that this court has not been inclined to give to section 19 of the Chancery act so great a scope or so far-reaching an effect as argued for by counsel for appellant.

Counsel for appellant also raise the question that some of the defendants in the original proceedings were domiciled in Germany and Austria, and that owing to a state of war existing between those countries and ours, which in a technical sense still continues, it was impossible to

carry out the provisions of section 12 of the Chancery act by reason of the non-communication between those countries depriving the defendants of access to our courts, and that consequently our chancery court did not acquire jurisdiction over them and cannot obtain such jurisdiction until after the technical state of war actually ceases between these countries. What we have already said, we think, in principle and effect answers the arguments of counsel on this point. In *Seymour* v. *Bailey,* 66 Ill. 288, it was held that a presidential proclamation issued pursuant to an act of Congress prohibiting all commercial intercourse with the enemy did not suspend the operation of statutes authorizing the prosecution of suits against non-resident defendants upon constructive notice by publication so as to deprive the court of jurisdiction and render its proceedings null and void. And the same conclusion was reached in *Dorsey* v. *Dorsey,* 96 Am. Dec. 633, (30 Md. 522,) where the court said among other things (p. 642): "The courts in such cases act upon the presumption of notice, which they will not allow to be rebutted. The whole theory of the law of constructive notice rests upon this foundation. In numerous cases an equal impossibility of receiving and complying with the notice exists as in the case of war. A party may be sick or imprisoned in a distant land, and under such circumstances that within the time limited no notice could by any possibility reach him. But this, or any *vis major* or act of God, will not oust the jurisdiction of the court over his property once obtained by pursuing the requirements of the statute or defeat the title acquired under its final decree thereon. If war and residence in enemy's territory can be set up to avoid the proceedings and defeat the title, there is no good reason why any other cause creating an equal impossibility of receiving notice should not be allowed to have the same effect. This would defeat the very object of the law, embarrass judicial proceedings and render insecure titles derived under judicial sales. After a

careful consideration of the question we are forced to the conclusion that the existence of the war furnishes no ground for impeaching the jurisdiction of the court and disturbing the title of the purchaser acquired in this case." If the contrary were the law, it would work an injustice to our citizens by depriving them of the relief to which they are entitled by the law of the State. No alien enemy can by his absence obstruct the operation of our laws as to the rights of citizens who are domiciled within the State. In proceedings of this kind, where the trust property is within the jurisdiction and control of the court of equity, there must necessarily be some method by which all parties in interest may be brought into court without too long delay and the disposition of the property provided for, and in such a way, also, that the trust officer in charge of the property will be protected by the order or decree of the court. Different persons will disagree as to the time that should be allowed as to non-resident defendants who are not reached by personal service. The three years allowed by section 19, if it were held, as contended for by appellant, that said section should apply to a case of this kind, would be thought by some to be too short a time to protect the rights of all parties interested, while others would think three years too long.

Counsel for appellant say that if the judgment of the Appellate Court be sustained and the property of the party distributed by the trustee under the order of the court such decree would be obnoxious to the provisions of the Federal and State constitutions as to due process of law. We cannot agree with this. The party served by publication is not deprived of any right which he had before. The court has ordered the custody of the property to be handed over to a distributee, but the non-resident has the same right to follow the property into the distributee's hands as he had to follow it into the hands of the court or trustee. The

right has been changed from one against the trustee to one against the distributee. The decisions of the English courts of chancery protecting the trustee where distribution was decreed in the absence of parties was a doctrine that was recognized long before our constitutions were adopted, and therefore following these rules is not taking property without due process of law, contrary to our constitution.

While some of the questions that we have considered here are not free from difficulty, we think the conclusion reached by the Appellate Court is in harmony with the weight of authority and in accordance with justice and fair dealing between the parties. In addition to the authorities already cited, the following, among others, tend to support the same conclusion: *Cowie* v. *Strohmeyer,* 150 Wis. 401; *Cleaveland* v. *Draper,* 194 Mass. 118; *Ernst* v. *Freeman's Estate,* 129 Mich. 271; *Wilson* v. *Board of Regents,* 46 Colo. 100; *Merrick* v. *Kennedy,* 46 Neb. 264.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

FARMER, DUNCAN and THOMPSON, JJ., dissenting:

We do not agree with the reasoning of the opinion upon which the court's decision is based. It was expressly decided in *Therens* v. *Therens,* 267 Ill. 592, that section 19 of the Chancery act does not deal with matters of practice but creates and confers rights on a certain class of defendants to a chancery suit. In our opinion the question here involved is not governed by the rules of the English chancery practice or the rules governing the exercise of chancery jurisdiction in proceedings purely *in rem.*