**John H. Sullivan, Appellee, v. Callie Hargis Sullivan, Appellant.**

**Gen. No. 8,823.**

Opinion

filed June 15, 1934.   Rehearing denied July 17, 1934.

WILBUR R. WICKS, for appellant.

JINKINS & JINKINS, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

August 5, 1932, appellee filed a bill in the circuit court of Vermilion county, Illinois, seeking a divorce from appellant, and alleged that she wilfully deserted and absented herself from him without any reasonable cause for the space of one year and upward preceding the filing of his bill.

Summons issued and was returned showing that appellant was not found in Vermilion county. On the 5th day of August, 1932, appellee filed an affidavit, in which it is alleged that appellant is a nonresident of the State of Illinois; that on due inquiry she cannot be found within the State, or that she is concealed within the State so that process cannot be served upon her; that upon diligent inquiry he has ascertained, and so states the fact to be, that her last place of residence and address was and is Webb City, Missouri, and caused publication to be made of the pendency of said suit, and on August 12, 1932, the clerk of said court made and filed a certificate of mailing notice to appellant at Webb City, Missouri, and proof of publication of notice was made and filed on October 7, 1932.

On October 11, 1932, appellant was defaulted, hearing was had upon the bill and a decree entered dissolving the marriage between said parties and declaring the same null and void.

On May 18, 1933, appellant filed her petition in said court, alleging that at the October term, A. D. 1932, appellee exhibited his bill of complaint against appellant and, on making an affidavit of nonresidence of appellant, caused publication to be made of the pendency of his suit for divorce, and that on October 11, 1932, at the October term of said court, a decree *pro confesso* was entered against appellant; that she had not been summoned, or served with a copy of the bill of complaint, or received a notice of the pendency of this suit, required to be sent her by mail by the clerk of this court, and had received no notice in writing within 90 days of such decree; that said decree is fraudulent as to your petitioner, and is based upon perjured testimony; that petitioner did not wilfully desert complainant, and praying that the court upon a hearing on said petition vacate said decree of divorce and grant her leave to answer the bill of complaint and make a defense.

On July 14, 1933, appellee filed an answer in which he denies the allegations of the petition and prays that the same be dismissed. On September 6, 1933, after a hearing upon said petition and answer the court denied the prayer of the petition, and this cause is here on appeal from the decree of said court.

Appellant filed affidavits in support of her petition, in which she stated that she is a resident of Webb City, Missouri, and that she has resided there practically all of her life; that appellee knew that she had resided there for several years past and also knew her street address, where they lived together as husband and wife until March, 1928, when he left to go to the Veterans' Hospital at Kansas City, Missouri, for treatment and remained there for a period of about three years, and then left for a Veterans' Hospital at Hines, Illinois, where he continued to take treatment; that appellee is a totally disabled veteran of the World War, and that when he left for the hospital there was no suggestion or intimation that he was going to leave appellant permanently, as he occasionally came home and remained for a time and then returned; that appellant was with him for several months in Kansas City, Missouri, and was in correspondence with him thereafter relative to his physical condition.

Appellant also states that although she has resided in Webb City, Missouri, practically all of her life, and was well known by the postmaster and the postal clerks and carriers, she never received through the United States mail at Webb City, Missouri, any notice of the pendency of a divorce suit brought against her by her husband in the circuit court of Vermilion county, Illinois, and had no notice that he had filed a suit for divorce, until advised some months later by the Veterans' Bureau discontinuing her compensation as the wife of appellee by reason of his having been divorced from her; that she was never summoned or served with a copy of the bill of complaint or received any

notice whatever of the pendency of said divorce bill in Vermilion county, Illinois, on behalf of her husband, and received no notice in writing from anyone at any time concerning the entry of said decree; that after she heard from the Veterans' Bureau that her husband had secured a divorce she did not believe the information so given her by said Veterans' Bureau to be true, as her husband had previously tried to secure a divorce from her without success, and she had received similar reports prior to this report which were false; that immediately after receiving such advice from the Veterans' Bureau that her compensation had been stopped, she inquired of various clerks of courts in Illinois, including Cook county, and finally ascertained that a divorce had been granted in Vermilion county, Illinois.

She further states that she was married to appellee on April 2, 1918, and that in 1921 he entered the Hospital at Kansas City, Missouri, and that she accompanied him; that in 1928 he suddenly left Webb City, Missouri, where he resided, for the Veterans' Hospital at Kansas City, Missouri, but that she did not go with him, but expected him to return as on previous occasions; that she failed to hear from him until July, 1931, when he returned home and informed her he had been in a Veterans' Hospital in Illinois, near Chicago, but did not state where; that he intended to remain in the hospital in Illinois until they gave him his permanent total rating, and that was the reason he was there; that when he had the total permanent rating he would be home, and that the next day after the conversation, which was sometime in the month of July, 1931, he left home and she did not hear from him personally after that time; that there never was any desertion on her part, but that he left her and never returned; that she heard that her husband was in the Veterans' Hospital, at Hines, Illinois, and wrote said hospital and the hospital replied that her letters would

be forwarded to appellee, and she never received any reply from him; that she never knew that he was in the Soldiers' Home at Danville, Illinois, until long after the divorce was granted when Mr. M. R. Lively, her attorney of Webb City, Missouri, after extensive inquiry from various clerks of courts in Illinois and elsewhere, finally learned, several months after the divorce was granted, that appellee had been in the National Soldiers' Home, in Danville, Illinois, and that he had secured a divorce in Vermilion county; that she received the following letter, dated November 11, 1932, from the Veterans' Administration at Hines, Illinois:

"Mrs. Callie Sullivan,
   215 South Oronoco St.,
   Webb City, Mo.
"Dear Madam:

"Apportioned Award of Disability Compensation to you is discontinued October 10, 1932, day prior to your divorce from the above named veteran. As payment at the rate of $30.00 per month has been made thru October 31, 1932, there is an overpayment of $20.32 on your Award.

"Please make payment of $20.32 by postoffice money order, draft, or check, payable to the Treasurer of the United States, and mail to Disbursing Officer, Veterans' Administration, Hines, Ill., attaching the enclosed copy of this letter to your remittance.

"For the Manager,
               (Signed)   E. F. McKee.
                          E. F. McKee,
                             Accountant,
                               Hines, Ill."

That this letter is the first advice or intimation received by her that her husband might have secured a divorce from her for the reason that she had not secured a divorce from him, and that her compensation would not have been stopped unless he had se-

cured a divorce from her; that she did not know where her husband was residing at the time she received the letter; that she answered said letter, and her answer was as follows:

"Webb City, Missouri,
November 16, 1932.

"Veterans Administration,
  Hines, Illinois.
"Dear Sirs:

"I have your letter of November 11th, advising that I should return a proportionate of my award of compensation and asking me to return your $20.32 as an over-payment.

"This will advise you that I have never obtained a divorce from John H. Sullivan and I have not been able to find where he has made application for divorce from me or the same has been granted. If you know of such petition for divorce or place and date where it was granted please advise me as I never received any notice of such a proceeding and would have contested it had I been notified. I contend I am entitled to the award as allowed me. You seem to be of the impression that I was granted a divorce from Mr. Sullivan which is not correct.

"About two or three years ago I had a similar experience claiming I had a divorce from John H. Sullivan but it proved to be false as this one is.

"Yours respectfully,
Mrs. Callie Sullivan,
215 South Oronogo,
Webb City, Mo."

That she received no reply to her letter, and that she also wrote to the clerks of the superior and circuit courts of Cook county, and received replies to the effect that no such case was filed or divorce granted.

She finally learned through her attorney, on February 27, 1933, that her husband secured a divorce from her in the circuit court of Vermilion county, Illinois,

and this was the first actual knowledge that she ever had as to a divorce having been granted. She thereupon retained counsel in Illinois, who advised her of her rights in the matter. Appellant filed several affidavits made by persons other than herself, in support of her petition.

Appellee filed an affidavit in support of his motion to dismiss the petition, in which he states that early in November, 1932, he received a letter from his former wife in which she stated that she had received a letter from the Veterans' Administration notifying her of the granting of the divorce in said cause and that he sent the same to the office of his solicitors, and that Samuel V. Jinkins, one of his solicitors, read said letter and returned it to appellee with instructions to retain it but that the same has been lost. Another affidavit filed by appellee was made by Etta Quance, of Carroll county, Arkansas, stating that she had lived at Danville, Illinois, and on or about the fifth day of November, 1932, was in the home of appellee when he received a letter from Callie H. Sullivan in which she stated that she had received the newspaper clipping warning of a divorce suit which was pending. One of his solicitors, Samuel V. Jinkins, also made an affidavit that on Monday, November 7, 1932, Irene Sullivan, in company with another lady, brought to his office a letter purporting to be from Callie H. Sullivan, from Webb City, Missouri, addressed to appellee in which the writer made reference to this divorce proceeding.

The statement contained in the affidavit of appellee, in reference to receiving a letter from his wife, was denied in the affidavit filed by appellant and the record discloses that the letter written by the Veterans' Administration was not dated until November 11, 1932.

We have carefully considered all of the evidence introduced on the hearing and are of opinion that it discloses that appellant, who was served by publica-

tion of notice of the commencement of the divorce suit, was not served with a copy of the bill and did not receive the notice required to be sent her by mail by the clerk of said court, and was not otherwise brought into court, and that after entry of said decree she never received any such notice in writing, as is contemplated by Statute, of such decree within ninety days prior to the filing of her petition herein. Section 19 of the Chancery Act as amended in 1931 (Cahill's Ill. Rev. St. 1931, ch. 22, ¶ 19) provides in part, with reference to service by publication, as follows: "When any final decree shall be entered against any defendant who shall have been served by publication with notice of the commencement of the suit and who shall not have been served with a copy of the bill, or received the notice required to be sent him by mail, or otherwise brought into court, and such person, . . . shall within ninety days after notice in writing given him of such decree, or within one year after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree, etc."

It is contended by appellee that appellant had notice of the decree by the letter written by the Veterans' Administration, at Hines, Illinois, more than 90 days prior to the filing of the petition herein by appellant, and for that reason she is not entitled to the relief sought.

This letter in no way informed appellant as to what court entered the decree of divorce, and from the letter one would understand that appellant obtained the decree. This is not such a notice in writing as is necessary under the statute. The facts in the case disclose that such letter was useless so far as protecting her rights, as with all of her inquiry and that of her counsel she was unable to find in what court and in what state or county the suit was instituted and decree

rendered for a period of over 90 days after receipt of the same. Under a former statute, which was like the present one except as to the time in which a petition might be presented, the Supreme Court in the case of *Smith v. Hunter*, 241 Ill. 514, in its opinion held: "It also appears that after the decree was entered in that case the executor wrote Hugh N. Greider, whose residence he ascertained subsequent to the entry of the decree, a letter, in which he notified him of the result of the litigation in the case of *Correll v. Greider et al.* in very general terms, and it is said that Greider was bound to take steps within one year from the date and receipt of such letter, under the provisions of section 19 of the chancery code, to open up said decree and protect his rights in said lands or he would be bound by said decree, and as more than one year had elapsed subsequent to the entry of said decree before the execution of the contract between Smith and Hunter, the title of Smith was good as against Greider. We do not agree with this contention. The statute provides that a person who has not been served with summons or by a copy of the bill, and who has not received the notice required to be sent him by mail in case of publication, shall have three years in which to petition the court in which the case is pending, to open up said decree and to allow him to defend, unless he has been notified in writing of the entry of said decree, in which case he must file his petition to open up the decree within one year from the receipt of such notice. The notice required to be given a defendant served by publication who has not received the notice required to be sent him by mail, in order to bar his rights in one year, is of great importance to a defendant who has been served by publication but not received actual notice of the pendency of a suit, and we think must be something more than a letter written him by a co-defendant which informs him, in general terms, of the result of the litigation to which he has been made a party, but

of which he has received no actual notice until a decree has been entered against him barring him of all his rights in the subject matter of the litigation. (*Lyon v. Robbins,* 46 Ill. 276; *Southern Bank of St. Louis v. Humphreys,* 47 id. 227; *Sale v. Fike,* 54 id. 292; *Martin v. Gilmore,* 72 id. 193.) We are of the opinion that the letter written Greider by Tomlin did not have the effect to limit the time in which Greider might apply to the circuit court, under sec. 19 of the chancery code, to have his rights in the subject matter of said litigation adjudicated and determined.''

It is also contended by appellee that the petition to set aside the decree and to permit appellant to answer, under the provisions of sec. 19 of the Chancery Act, Cahill's St. ch. 22, ¶ 19, is addressed to the sound discretion of the court, and that one seeking such relief must not only show diligence in protecting his rights but that he has a meritorious defense.

That is the rule where one has been served with process and for some reason fails to appear and answer, and for that reason is defaulted; but sec. 19 was enacted for the benefit of one who was not served with process and had no written notice that a decree had been entered.

When a final decree is entered against a defendant and it is made to appear from the evidence that such defendant was served by publication with notice of the commencement of the suit, and was not served by a copy of the bill and did not receive the notice required to be sent him by mail, or was not otherwise brought into court, the court has no discretion but must, if it shall appear that such decree ought not to have been made against such defendant, either set the same aside, or alter or amend it as shall seem just, and the only diligence required is that fixed by sec. 19, viz.: That he shall within 90 days after notice in writing given him of such decree, or within one year after such decree, if no notice shall have been given as aforesaid,

appear in open court and petition to be heard touching the matter of such decree.

Every person is entitled to an opportunity to be heard before his rights are finally determined, and in order to protect those who are served by publication and have had no notice of the pendency of the proceeding in which he is a party defendant, this section 19 of the Chancery Act was enacted, and should be so construed as to give all who bring themselves within its provisions a right to defend. In the case of *Northern Trust Co. v. Sanford,* 308 Ill. 381, 395, the court held: "Provisions similar to those in sec. 19 have been enforced in this State ever since 1827. (Rev. Code of 1827, p. 88; ibid, 1833, p. 118; Rev. Stat. 1845, chap. 21, sec. 15.) Said acts, including section 19 of the present Chancery act, have been construed at all times by this court to the effect that a decree entered against a non-resident defendant served by publication is provisional, interlocutory and conditional and not final or conclusive, and the decisions show that it was not the intention of any of those acts that such defendant should be condemned without being heard, or that he should lose any rights guaranteed him under the law when he makes proper application to answer and to be heard. (*Southern Bank of St. Louis v. Humphreys,* 47 Ill. 227; *Seymour v. Bailey,* 66 id. 288; *Martin v. Gilmore,* 72 id. 193; *Methodist Episcopal Church v. Field,* 135 id. 112; *Smith v. Hunter,* 241 id. 514; *First Congregational Church v. Page,* 257 id. 472; *Harter v. Kernochan,* 103 U. S. 562.) This court has also held that until finally confirmed under such a proceeding as the present one, or until three full years have expired after the entry of the decree, the decree is simply provisional or interlocutory and not final; that the Statute of Limitations does not begin to run until three years have expired, and that a defendant may prosecute a writ of error or a bill to impeach the decree within the time allowed by law, counting from

the time the three years allowed to defend have expired. (*Lyon v. Robbins,* 46 Ill. 276; *Sale v. Fike,* 54 id. 292.)''

We are of opinion that the court erred in refusing to grant the prayer of the petition. Appellant has, by her petition, brought herself within the terms of this statute and is, therefore, entitled to be heard in defense of this action. If as a matter of fact she was guilty of desertion, that can easily be made to appear; and, on the other hand, if it should develop from the evidence that a fraud has been practiced upon the court, as claimed by appellant, the appellee should not be entitled to a decree.

The decree of the circuit court is reversed and cause remanded with directions to vacate the decree and grant appellant leave to file an answer to the bill for divorce.

*Reversed and remanded with directions.*