Giles Scott

*v.*

James D. Milliken *et al.*

1. Decree *upon constructive service—opening the same.* Where a mortgagor is a non-resident, and served by publication, and within the three years allowed by the statute applies to the court for leave to answer, and is permitted to do so, he occupies the same position to the case as though he had been personally served and was defending in the first instance. The decree originally rendered on his default, in nowise affects his rights on the trial, on his answer.

2. No reason is perceived why a party, applying under the statute and being permitted to answer by the court, may not be allowed to demur, if the bill is substantially defective, but not for mere technical defects.

3. Sale—*of interest in mortgaged premises pendente lite.* Where a party thus let in to defend, after answer filed sells his equity of redemption, the suit may still progress in the name of such defendant; or, if application be made for the purpose, the court probably might permit the grantee to become a party defendant.

4. Strict foreclosure—*purchasers from complainant.* Where a mortgagee files a bill to foreclose, makes publication against a non-resident mortgagor, and obtains a decree of strict foreclosure on a default and then sells the property, and the purchasers make lasting and valuable improvements, it is correct practice for the mortgagor, who afterwards obtains leave to answer, to file a cross bill, and make such purchasers defendants and parties to the suit.

5. In such a case, equity requires that the land should be valued, and if not equal to the mortgage debt, then the foreclosure may be strict, unless a redemption shall be made. If, on the other hand, the land, apart from the improvements, is found to be of greater value than the debt, the mort-

gagor should be allowed to redeem as in the other case, but if not re-deemed, a sale should be decreed, and from the proceeds should be paid the costs; the debt due on the mortgage notes, and taxes paid by complainants before selling to the purchasers, should be paid to them; to the mortgagor the excess of the value of the land unimproved over the amount of the costs, debt and taxes; to the purchaser from the mortgagor the value of the improvements independently of the land, which value should be ascertained by the court.

APPEAL from the Circuit Court of Cook county; the Hon. WM. W. FARWELL, Judge, presiding.

Mr. W. T. BURGESS, for the appellant.

Messrs. DUNHAM & BONFIELD, and SLEEPER & WHITON, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 19th day of May, 1857, Alexander Smith sold certain lots in Chicago to Clark and Thomas, taking back a mortgage to secure the unpaid purchase money. Smith subsequently assigned the notes then unpaid, to James Henry Smith, Platt A. Smith and Anna Smith, and they filed their bill in chancery for a strict foreclosure. A decree was pronounced on the 26th of January, 1864. It being subsequently ascertained that Clark and Thomas had conveyed to Joel I. Scott, and he to Giles Scott, before the bill was filed, a second bill was brought, making Giles Scott a party. He was served by publication only, and not answering, was defaulted, and a decree of strict foreclosure was again pronounced, requiring payment to be made in ninety days. The payment was not made, and the complainants subsequently sold the lots to different parties, one of whom was James D. Milliken, who bought three of the lots, and afterwards sold an interest in them to George N. Milliken. This second decree was made June 1, 1867, and in December, 1869, Scott filed his petition for leave to answer, under the section of the chancery act allowing defendants, not personally served, to appear and

answer within three years from the rendition of the decree. He was permitted to answer, and he also filed a cross bill making the two Millikens parties, as they were not parties to the original bill. On the final hearing, the court pronounced a decree authorizing Scott to redeem on payment of the unpaid purchase money secured by the mortgage, the taxes and interest, and the improvements made by the Millikens since their purchase. In the event no redemption should be made, the property was to be sold, and the debt, taxes, and value of the improvements, were to be first paid, after the costs.

Both parties have assigned errors upon this record. We do not deem it necessary to discuss every point raised in the argument. It is sufficient to dispose of those questions which are decisive of the case.

Counsel disagree as to the position which Scott occupies. We consider he has the same right to redeem that he would have had if he had been personally served with process, and had appeared and defended before the decree was rendered. He lost no rights by that decree. The statute leaves no room for doubt. It provides that, after paying such costs as the court deems reasonable, the party petitioning to be heard may "answer the complainant's bill, and thereupon such proceedings shall be had as if the defendants had appeared in due season and no decree had been made." This language is explicit. In this case, the court did not permit the defendant to demur, but required him to answer. The statute provides that the defendant may answer. This does not, necessarily, exclude the right to demur. It may be well enough to hold, that a demurrer, based upon merely technical grounds, will not be entertained, but if the bill is so substantially defective as not to show any ground for relief, we see no reason why the defendant should not be permitted to raise that question by demurrer. In this case, the defendant has not been prejudiced by striking his demurrer from the files. The complainants have a right to foreclose their mortgage. The defendant has a right to redeem, and the court, by requiring him to answer

and permitting him to file a cross bill bringing in the Milli-kens, took the most effectual mode of disposing of the controversy upon its merits.

It is urged by complainants that Scott, after he appeared and presented his petition to be heard, and after leave was given and he had filed his demurrer, but before answering or filing his cross bill, conveyed to one Weston his equity of redemption, and therefore should not have been permitted to take any further steps in the suit. The authorities cited in support of this untenable position, have no application to a case like this. Scott has been brought into court as a defendant for the purpose of extinguishing his equity of redemption. Pending the suit he conveys this equity. Counsel certainly will not contend that the rights of complainants, or their position before the court, were affected in any respect whatever by Scott's conveyance. Weston, taking as a purchaser *pendente lite*, would be bound by the decree without being made a party. Perhaps the court would have permitted him to be made a party if he had presented a petition for that purpose, but it was his right to protect his interests by continuing the defense in the name of Scott, and it was a matter of total indifference to the complainants which course might be pursued. As to the cross bill, that was also properly filed in Scott's name, because it was a mere incident to the defense, and proper for the purpose of bringing the Millikens before the court. Although the suit might have progressed without them, yet, as they had purchased from the original complainants, and had made valuable improvements, it was better for them and for all parties that they should be brought before the court, and that all the equities should be adjusted in this suit. They can not complain because an opportunity was given to them to assert their rights.

The real question in this case, and the only one which presents any difficulty, relates to the improvements made by the Millikens after their purchase from the Smiths. The court below decreed that Scott might redeem by paying, within

ninety days, the amount of the mortgage debt, and also the value of the improvements, which were estimated at $12,000. The decree further provides that, in default of redemption, the premises shall be sold, and the proceeds of sale, after payment of costs, be applied first to the extinguishment of the debt and the payment of the improvements. The Millikens, owning both the debt and the improvements, would, under this decree, be paid in full, before Scott, as owner of the equity of redemption, would receive anything.

It is contended by appellant, that the Millikens are not entitled to payment for their improvements, under the rules which regulate the allowance of compensation for improvements made by a mortgagee in possession. This case, however, is peculiar, and in our opinion a broader equity should be applied to it than that which governs in the ordinary case of mortgagor and mortgagee. When the Millikens bought, and proceeded to erect their houses, there had been a decree of strict foreclosure by which the absolute title had apparently passed into the complainants. Still they must be held to know the law, and held, also, to notice of the fact that Scott was not personally served, and might come within three years and set aside the decree. On the other hand, Scott had owned the equity of redemption more than seven years when this bill to foreclose was filed, and about nine years when he filed his petition for leave to answer. The notes secured by the mortgage had been due nearly five years before the bill was filed. Scott had paid no taxes since he bought, the proof showing that the complainants had paid them from 1858 to 1867, and then the Millikens began to pay. A fair inference from these facts is, that Scott had considered the lots not worth the incumbrance, and had practically abandoned them until he found these houses erected upon them, and then he determined to assert his rights as holder of the equity of redemption. If, on the other hand, he regarded himself as owning a valuable interest in this property, he must be charged with notice of the fact that the Millikens were in possession and erecting valuable

improvements, and it was an act of bad faith on his part to allow them thus to expend their money without notice of his claim, and come forward to assert it as soon as such expenditure was complete. The claim on his part to take their improvements made under such circumstances, without compensation, is a claim to which a court of chancery can hardly listen with patience, violative, as it is, of every sense of justice.

Still, it must not be forgotten that Scott was the owner of the land, subject only to the mortgage, and that position he still retains. If he has no equitable claim on the Millikens' improvements, on the other hand they have no claim, either legal or equitable, upon his title to the land, apart from the lien of the mortgage. Remembering this, it is not difficult to arrive at an equitable basis of adjustment. The court should ascertain, by proof, the value of the lots, independently of the improvements. If this value does not exceed the amount due upon the notes held by complainants when they filed their bill, then a decree should be pronounced by which Scott should be permitted to redeem in ninety days by paying the debt, improvements, taxes and costs. To this point, the decree actually rendered was correct. If, however, the value of the land, unimproved, does not equal the amount of the debt, no decree of sale should be made ; that would be useless, and make unnecessary costs. If Scott should not elect to redeem within the time appointed, he should then stand foreclosed.

If, on the other hand, the land, unimproved, shall be found to exceed the debt in value, the court should still, as in the other case, give to Scott the right of redemption, but instead of decreeing a strict foreclosure in case he fails to redeem, should decree a sale, and that, out of the proceeds, shall be paid, first, the costs; second, the debt due on the notes, and taxes paid by the complainants before selling to the Millikens, which sum should be paid to the Millikens as the present holders of the debt; third, to Scott, the excess of the value of the unimproved land over the amount of the debt and taxes ; fourth, to the Millikens, the value of the improvements,

independently of the land, which value should be ascertained by the court; fifth, the residue, if any, to Scott.

By such a decree, we think justice will be done to all parties. The decree is reversed and the cause remanded.

*Decree reversed.*