(No. 14755.—Reversed and remanded.)
THE NORTHERN TRUST COMPANY, Exr. Appellee, *vs.* WIL-
LIAM M. SANFORD *et al.* Appellants.

*Opinion filed April 18, 1923—Rehearing denied June 18, 1923.*

1. PLEADING—*defense of fraud and misrepresentation may be set up by answer to bill to foreclose.* Fraud and misrepresentation in making an exchange of real estate may be set up by answer to a bill to foreclose a mortgage given as a part of the transaction, and such defense is not required to be set up by cross-bill.

2. EVIDENCE—*party not interested in suit cannot be disqualified as witness by being made defendant to bill.* A defendant in chancery cannot be disqualified as a witness by being made a party to a suit in the result of which he has no interest, but where defendants to a bill to foreclose a mortgage have made no objection to the master's ruling excluding the testimony of such a witness on the ground that he is a party, they cannot afterwards complain of the ruling on appeal.

3. PRACTICE—*party should object to alleged erroneous rulings of master in taking evidence.* The rulings of the master in chancery as to the admission or rejection of evidence are not such matters of law as require no objections to have a court pass upon the rulings, but the complaining party should object in some proper way to such rulings and obtain the judgment of the court thereon.

4. INTEREST—*commission charged by a broker for negotiating a loan does not render interest usurious.* A broker negotiating a loan of another person's money may charge the borrower a commission without thereby making the loan at the full rate of legal interest usurious.

5. MORTGAGES—*when junior mortgagee is not entitled to solicitor's fees.* A junior mortgagee who is defendant to a suit to foreclose the prior mortgage is not entitled to solicitor's fees for the settlement of her claim where no allowance of solicitor's fees is provided for in her trust deed except in case of foreclosure, as she is entitled to have her rights adjusted before the master by mere motion, without filing a cross-bill; and a solicitor's fee should not be allowed in such case even though a cross-bill may be necessary to secure other affirmative relief.

6. SAME—*provisions for attorney's fees are to be construed strictly.* Provisions for attorney's fees are to be construed strictly, and such fees cannot be recovered for any services unless so provided by the trust deed or mortgage.

7. Same—*foreclosure decree should be for amount due on note and not for judgment confessed.* Where judgment has been confessed on a mortgage note such judgment stands entirely on its own footing, and in a suit to foreclose a prior incumbrance the holder of the note upon which judgment is confessed, having been made a party as junior mortgagee, is not entitled to a decree for payment of the confessed judgment but only for the amount due on the note.

8. Same—*personal judgment cannot be had unless defendant was personally served with process.* The complainant in a foreclosure suit cannot legally have a personal judgment entered against the defendant for any sum where the defendant has not been personally served with process.

9. Same—*service of copy of a cross-bill is not authorized by the Chancery act.* Sections 14 and 19 of the Chancery act give no authority for the service of a copy of a cross-bill in a foreclosure suit, and as the cross-bill is a mere adjunct to the original bill and is a part of the same suit, the statute does not require any process thereunder to issue against any parties to the original bill.

10. Same—*bill should be amended to show death of complainant.* Leave to substitute the executor does not constitute an amendment to a bill, nor does the suggestion of complainant's death on the record in a foreclosure suit obviate the necessity of amending the bill to show the name of the new complainant; and although the defendants, who have appeared and answered after the decree under section 19 of the Chancery act, should plead complainant's death in abatement, their failure to do so does not cure the defect in the bill, and it is error for the court to confirm the decree.

11. Same—*when holders of notes not due are not necessary parties to bill to foreclose.* A bill to foreclose a trust deed given to secure twelve notes, due at different dates, need not make parties to the suit the holders of two notes which are not yet due and which the complainant has sold and made a lien superior to the notes for which the foreclosure is brought, where no relief is asked against the holders of said notes and every right they have in the premises is preserved to them by the decree.

12. Same—*rights of defendants not served with notice of foreclosure suit under section 19 of Chancery act.* Under section 19 of the Chancery act, defendants who have not been summoned or served with notice as required by law, may within the time provided in the statute either answer the bill or file a demurrer or a cross-bill, and as to such defendants the suit will continue as if no decree had been entered theretofore, and in case of foreclosure such defendants will have the same right to redeem the mortgaged

premises that they would have had had they been personally served with process and made their appearance and defense before the decree was entered.

13. PROCESS—*service must be had as required by law.* Due process of law requires notice to and service upon a defendant, as required by law, before his property rights may be divested by a decree of court, and although a defendant has had notice in some manner not prescribed, his rights cannot be affected if he has not had the notice and service according to law.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

OTTO F. RING, and WALT A. HANSEN, for appellants.

MONAHAN & MONAHAN, (LEROY HACKETT, and DEMING & JARRETT, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On May 7, 1918, the superior court of Cook county entered a decree on a bill in which Martin T. Corby was complainant, and appellants, William M. Sanford and Mary J. Sanford, with others, were defendants, for the foreclosure of a trust deed executed by appellants to secure twelve notes, eleven for $1500 each, numbered from 1 to 11, and one for $48,000, numbered 12. One note was to become due every six months in numerical order, with interest until maturity at six per cent per annum, payable semi-annually, and to bear interest at the highest lawful rate after maturity, and interest coupons were executed to evidence all of the installments of interest. Complainant had sold to another party principal notes 11 and 12 and retained as owner the other principal notes, and under the provisions of the trust deed he elected to declare due notes 2 to 10, inclusive, there being default in payment of note 1 and certain of the coupon notes. Foreclosure was asked as to the first ten notes, subject to the liens of principal notes 11 and 12. Corby had

died on February 4, 1918, and his death being suggested on the record, leave was given by the court to substitute as complainant the Northern Trust Company, executor of Corby's will. Such substitution was never made and the bill was in no way amended. There does not appear to be any proof in the record of Corby's death or of any letters of administration granted to the Northern Trust Company as executor. In the title to the decree the Northern Trust Company, executor of the estate of Martin T. Corby, deceased, is named as complainant, and in the decree it is found that on November 15, 1917, there was due "the then complainant, Martin T. Corby," under the terms of the trust deed, $20,975.86, with interest thereon at five per cent from said date, and also to the Northern Trust Company, as executor of said estate, the further sum of $1500 as and for complainant's solicitor's fee; that the Northern Trust Company, executor, has a valid and subsisting lien upon the real estate for said two sums and interest, plus its legal court costs, which constitute a first lien on said real estate, subject to the lien thereon of principal notes 11 and 12. Lena Rosenthal and Elmer G. Duff, trustee, had filed their answer and a cross-bill, claiming a second lien under a trust deed to Duff to secure a note given by appellants to her. The decree found that Lena Rosenthal had a second lien for $7517.93 for the amount due on said note and trust deed and the sum of $400 as solicitor's fees, and ordered that in case of sale for an insufficient amount to pay the sum due, the master report the deficiencies due the Northern Trust Company, as executor, and to Lena Rosenthal, and that they shall be entitled to judgments and executions for the amount of the deficiencies, and that the sale shall be subject to the continuing lien of the deed of trust to the Chicago Title and Trust Company for the indebtedness to the legal holder or holders of principal notes 11 and 12. The master in chancery reported that he sold the premises to the Northern Trust Company, trustee under the will of

Corby, on June 17, 1918, for the sum of $15,000, subject and subordinate to the continuing lien of the deed of trust securing principal notes 11 and 12. A receiver was appointed by the court under the provisions of the trust deed to Corby's trustee, with power to continue as such pending the period of redemption, and to collect and apply the rents in case the sale should be insufficient to pay the amount of the decree. There was reported by the master in chancery a deficiency due the complainant of $8551.07 and to Lena Rosenthal of $7917.93, and that William M. Sanford was personally liable for said amounts, and judgments were rendered for said amounts against him. The decree made the amounts of the respective deficiencies a charge upon the rents of the premises, improved with a three-story brick apartment building and a one-story brick building containing eight garages, during the period of redemption. The record shows that on August 14, 1919, the judgment in favor of Lena Rosenthal was assigned to Emma P. Behrens, and the court approved the final report of the master in chancery showing that on September 18, 1919, he made a deed to the premises, pursuant to the decree, to Mrs. Behrens. On the latter date the receiver made a report of the total receipts of rents and that he paid therefrom the total amount due the Northern Trust Company on its deficiency judgment, and on October 4, 1919, he was ordered to pay $2431.87 on the deficiency judgment in favor of Lena Rosenthal and $404.23 to Mrs. Behrens as her portion of the rent received after September 18, 1919, (the date of the master's deed,) and thereafter was discharged. The record further shows that service on the Sanfords was by publication as in case of non-residents in chancery, they being then residents of Michigan, and that the decree was taken against them on default of appearance and answer by them. On May 6, 1921, the appellants filed their sworn petition in proper form, under section 19 of the Chancery act, asking for leave to appear and answer the bill of complaint and

308—25

the cross-bill, and it was therein stated on oath that they were residents of the State of Michigan, were not served with summons or a copy of the bill, had not received any notice required to be sent them by mail, and did not receive any notice in writing of the entering of the decree. On July 12, 1921, the chancellor ordered that they have leave to answer, on condition that they pay to the clerk $500 to secure costs. They paid that amount and filed their answers to the bill and cross-bill. In their answer to the original bill they set up, in substance, the fact that they were joint owners of 177 acres of land near Paris, Michigan, which they exchanged for the premises in question; that in their written contract for such exchange with Corby it was expressly stated and guaranteed that the total annual rentals paid to him for the premises which he was to deed to them, were $12,660; that they relied upon said statement and guaranty; that they afterwards learned that the actual rentals for the premises when all parts thereof were rented did not exceed $11,000 per year; that the rentals to be paid Corby in the leases signed by his tenants did not state the correct rentals, as he had agreed with and had it understood by his tenants that they were only to pay eleven months' rent in a year at the stipulated price in the leases; that Corby made such representations in the contract knowing they were false and for the purpose of inducing appellants to make an exchange of properties; that in Chicago apartment buildings are valued according to the rentals they produce, and that the market value of the apartment building and premises received from Corby in such exchange was only eighty-five per cent of the value paid by appellants ($91,125,) and that they were damaged fifteen per cent of $91,125 by reason of such false representations, on which they relied, and they claimed that such damages should be deducted from the amount due from appellants on the premises. The answer further charged that all twelve notes given by them to Corby were equal liens on the premises,

and they denied the right of Corby, by reason thereof, to declare the first ten notes subject to the lien of notes 11 and 12, and insisted by their answer that the owners of notes 11 and 12, who were not made parties to the suit, are necessary parties to the bill, and that appellants will be damaged by not having them made parties to the bill and by having the other notes foreclosed and the premises sold subject to the lien of said notes. The answer of appellants to the cross-bill charged usury in the note of Lena Rosenthal, and claimed that they borrowed $9000 from her and gave a note for that sum and interest but only received $8000; that they are not indebted to her in the sum found due by the decree but are only indebted to her in the sum of $8000, less payments made by them, which would be a much less sum than the one found due. The issues were referred to a master in chancery, who took the evidence and made his report January 4, 1922, recommending that the original decree be confirmed. The chancellor heard the cause on exceptions to the report, overruled the same and confirmed the original decree. This appeal is from that order of confirmation.

The defense of fraud and misrepresentation set up in the answer to the bill is a good defense in part, and if proved would entitle the appellants to a set-off against the amount found due on the eleven notes in suit, and such defense may be made by answer and need not be made by cross-bill. (3 Jones on Mortgages,—7th ed.—sec. 1492.) Appellants were not able to prove this defense by reason of the erroneous ruling of the master in chancery, who on the taking of testimony ruled that the janitor of the building, who knew all about the rentals and the amounts collected and the concession of one month's rent in a year made to the tenants by Corby, was an incompetent witness because he was a party to the suit. He was made a party defendant apparently because he was in charge of the building and collected the rents. He was not shown to have

any interest in the event of the suit, and the only reason for the ruling was that he was a defendant. It is too elementary to require the citation of authorities that a defendant in chancery is not disqualified and cannot be disqualified as a witness by making him a party to a suit wherein he has no actual interest in the result thereof. But appellants are not in a position to take advantage of that ruling as no such objection was made to the master's report. Where a party desires to have the court revise the rulings of the master as to the admission or rejection of evidence he should file an objection to the master's report, pointing out such ground with reasonable certainty, and if the master still adheres to his ruling and returns the report into court, the party objecting may then file exceptions to the report and to such ruling. If the court sustains the exceptions the report should be disapproved and the master required to re-take the evidence under the court's ruling. (*Hurd* v. *Goodrich*, 59 Ill. 450.) The foregoing is not intended to exclude any other proper method of correcting the master's ruling on evidence, and the court might review the evidence excluded by the master before the latter makes his report, on motion of the complaining party, and if the master's ruling is found to be incorrect the court should rule him to take the rejected evidence and then make his report on the entire evidence taken. The exceptions were argued before the court in this case upon the theory that the master's ruling was a matter of law, which required no objections to have the court pass on the ruling. This rule does not apply when the error of the master is in refusing to allow testimony that is competent. The contract containing the alleged false and fraudulent representations was introduced in evidence but is not abstracted and so far as we can find is not in the record.

The defense of usury made by the answer to the cross-bill was not proved, the substance of the proof being that appellants borrowed from Lena Rosenthal $9000 and re-

ceived from her $8000, and $1000 was paid Duff as a commission for securing the loan for them. There is no proof that Lena Rosenthal ever received any of that commission. The note was given for $9000 and the interest that was to accumulate thereon. Brokers negotiating a loan of another person's money may charge the borrower a commission without thereby making the loan at the full rate of legal interest usurious. *Hoyt* v. *Pawtucket Institution for Savings,* 110 Ill. 390.

Appellants make the claim that it was error to confirm the decree for several reasons apparent on the record, among which is one that the decree erroneously allowed $400 as solicitor's fee to Lena Rosenthal for foreclosure of the trust deed given her. This claim must be sustained. A junior mortgagee, if a party to a bill to foreclose a prior mortgage, may by mere motion, without an answer or cross-bill, and certainly by filing a short answer and the evidence of his lien, have his claim referred to the master to hear evidence and to report the sum due him. The $400 solicitor's fee allowed in this case was unauthorized by the trust deed, as it provided that only in case of foreclosure should a solicitor's fee be allowed. The cross-bill was unnecessary, and no such unnecessary expense should be paid by appellants. *Soles* v. *Sheppard,* 99 Ill. 616; *Gardner.* v. *Cohn,* 191 id. 553; *Armstrong* v. *Warrington,* 111 id. 430; *Dillman* v. *Will County Nat. Bank,* 138 id. 282; *Blatchford & Co.* v. *Blanchard,* 160 id. 115; *Wallen* v. *Moore,* 187 id. 190.

Appellee makes the claim that the cross-bill was not only filed to foreclose the second trust deed, but was also filed to obtain other affirmative relief which could not be had except by cross-bill. This does not appear from the cross-bill in the record to be correct, and if it were, it would not entitle appellee to a $400 attorney's fee, because by the provisions of the trust deed the fee was to be allowed in case of foreclosure and for the services of the solicitor in the foreclosure. Provisions for attorney's fees are to be construed

strictly, and such fees cannot be recovered for any services unless so provided by the trust deed or mortgage.

The claim is also made that there was a confessed judgment entered in some court upon Lena Rosenthal's note, proof of which is made in the record. That judgment stands entirely upon its own footing, and Lena Rosenthal was not entitled to a decree for payment of that judgment but only for the amount due on the note.

The original decree erroneously gave judgments or decrees for the deficiencies to complainant and Lena Rosenthal, or for the balances due after distribution. The only service in this case that can be recognized as an attempt at legal service upon appellants is service by publication, as already stated. The proof is that they did not receive a copy of the publication notice by mail, or any other notice of the decree recognized by law, prior to their appearance asking leave to answer the bill. The complainant in a foreclosure suit cannot legally have a personal judgment entered against the defendant for any sum where the defendant has not been personally served with process. There is no claim in the record that appellants were served with a copy of the original bill or that they were served with summons. The appellee claims that a copy of the cross-bill was served upon appellants, and also a notice for them to appear before the court on a certain day and answer the cross-bill or that default would be taken against them. There is in the record attempted proof of such service by the sworn statement of the agent who made the service and who was sworn thereto by a notary public of Michigan. The appellants objected to the proof on the ground that there is no sufficient proof in the record that the notary had authority to administer oaths, and on the further ground that there is absolutely no authority, in law, for the service of a copy of the cross-bill and notice to plead. It is only necessary here to consider the latter ground of objection.

The authority for service of a copy of the bill on the non-resident defendants is sections 14 and 19 of our Chancery act, which latter section provides as follows: "When any final decree shall be entered against any defendant who shall not have been summoned or been served with a copy of the bill, or received the notice required to be sent him by mail, and such person, his heirs, devisees, executor, administrator or other legal representatives, as the case may require, shall, within one year after notice in writing given him of such decree, or within three years after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree, and shall pay such costs as the court shall deem reasonable in that behalf, the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendants had appeared in due season and no decree had been made. And if it shall appear, upon the hearing, that such decree ought not to have been made against such defendant, the same may be set aside, altered or amended as shall appear just; otherwise the same shall be ordered to stand confirmed against said defendant. The decree shall, after three years from the making thereof, if not set aside in manner aforesaid, be deemed and adjudged confirmed against such defendant, and all persons claiming under him by virtue of any act done subsequent to the commencement of such suit; and at the end of the said three years, the court may make such further order in the premises as shall be required to carry the same into effect."

It will be observed that said sections give absolutely no authority for the service of a copy of a cross-bill in a foreclosure suit. An original bill and cross-bill constitute but one suit, as the cross-bill is a mere adjunct to the original bill, and the statute does not require any process thereunder to issue against any parties to the original bill. (*Fleece* v. *Russell,* 13 Ill. 31.) Besides, in this case the cross-bill to

foreclose the second trust deed was not at all necessary. Every act performed by the agent in serving the notice and a copy of the cross-bill was unauthorized by law and had no binding force whatever. Due process of law in the regular course of judicial proceedings requires notice to and service upon a defendant of the character required by law before his property rights may be divested by a decree of court. It is not material that as a matter of grace or favor notice may have been given to him of the proposed proceedings in some manner not prescribed by law, but the real question in every case is, Has he had notice and service according to law?—and if not, his rights are protected, under our constitution, against any unwarranted service and notice, the same as if he had not received any notice whatever. *People* v. *Marquis,* 291 Ill. 121; *Security Trust and Safety Vault Co.* v. *Lexington,* 27 Sup. Ct. 87.

The decree in this case confirmed by the court is in favor of the Northern Trust Company, executor, and in the bill no reference whatever is made to that company, as a substituted complainant or otherwise. The original bill was never changed in any particular after the death of Corby, the complainant therein, and there was no bill of any kind filed by the executor. It was this bill by Corby to which appellants filed their answer by leave of court. Leave to substitute the executor for the deceased complainant does not constitute an amendment to a bill or a declaration. (*Wisconsin Central Railroad Co.* v. *Wieczorek,* 151 Ill. 579.) The suggestion of the death of the complainant on the record does not obviate the necessity of properly amending the bill so as to show the name of the new complainant, or of proving such death and other required allegations of the bill, to authorize the substituted party, as complainant, to continue the proceedings against defendant. There is no question about the original complainant dying. While there is no proof of it, the record repeatedly refers to such death as a fact, and there is no claim that Corby is not dead.

The bill stands in the record to-day in the name of the dead complainant, and the decree does not follow the bill but is in favor of a party or executor that never was substituted as complainant or referred to in the bill in any way. In reply to this condition of the record it is stated that such condition was not set up in the answer of the appellants. The leave given them was to answer the original bill and the cross-bill, which they did, and it is their right, after proofs taken, to argue any ground under the evidence taken in the original proceedings which appears in the record and also under the evidence taken in the present suit, which showed that the original decree should not and could not be confirmed.

Under the provisions of section 19 of the Chancery act, on appellants' answers being filed to the bill and cross-bill such proceedings were to be had as if they had appeared in due season and no decree had been made, and if, upon hearing, such decree ought not to have been made against them, the same should have been set aside, altered or amended as should appear just, otherwise the same should have been ordered to stand confirmed against them. The showing in the record is that such a decree ought never to have been made and that the court erred in confirming it. The fact is that the suit abated on the death of Corby, and appellants should have, really in their own interest, pleaded such abatement; but, notwithstanding the fact that they did not plead such abatement, it was error of the court to confirm a decree in favor of the executor without any bill in the record or proof to support the decree.

The claim of the appellants that the holders of notes 11 and 12 are necessary parties to the bill, and that they were prejudiced or would be prejudiced by the foreclosure and sale of the mortgaged premises subject to the lien of said notes, cannot be sustained. No relief whatever was asked against the holders of said notes and every right they had in the premises was preserved to them by the decree. It

was not necessary, therefore, for them to be made parties.
The liens of those notes were for definite sums, and all interest due on those notes was paid by Corby and his executor before the proceedings were begun, and the coupon notes were assigned to him by the holders of the notes and the amount of the coupons due up to the decree were included in the decree. A purchaser buying the real estate, knowing definitely the amount of these liens and knowing that he was purchasing subject thereto, would not be alarmed by reason of the fact that the liens were continued and to be continued until the notes fall due or until default should be made thereon. There are many reasons why a sale of the property under these conditions might be beneficial to appellants rather than otherwise, as it would tend to invite more purchasers for the property who were not ready to pay cash. This court has heretofore sustained such a decree and held that it was the right of a complainant with an equal lien to confer a superior lien on the holders of notes not due, as Corby did in this case. *Boyer* v. *Chandler,* 160 Ill. 394.

Emma P. Behrens, the holder of the master's deed to the property, by leave of court was made a defendant for the purpose of resisting appellants in having the original decree set aside, and she was really the only person who did defend against such relief. Appellants in their answers alleged that the complainant and the receiver had been in possession of the premises since October 1, 1916, and that all rentals from the premises since that date should have been collected and applied to the payment of the mortgage indebtedness, and also the rents collected by any other persons should have been similarly applied to the reduction of the mortgage debt. They offered to tender and pay any sum due upon the notes secured by both trust deeds if any should be found due, and asked for an accounting, under the direction of the court, from all such parties, including Lena Rosenthal. The court refused such accounting and

application of the rents, and refused to give appellants any right to redeem from said sales after the accounting. Not only the decree of the court stands confirmed, but, in effect, the sale of the appellants' property and the master's deed to Mrs. Behrens stand confirmed, and appellants' right to redeem their mortgaged property, guaranteed them under the law, is forever cut off. It is clear that under section 19 of the Chancery act appellants were guaranteed, after they filed their answers, that the proceedings from thence forward should be the same as if they had answered in due season and no decree had been entered theretofore. In fact, these are the express provisions of the statute. The statute gave the complainant no right to have all proceedings after decree, the sale of the premises and the final report of deed, confirmed and all right of redemption taken away from appellants. The last sentence of the act is to the effect that after three full years have passed after the entry of the decree and it not having been set aside as provided in the act, only the decree is then deemed and adjudged to be confirmed, and the court is then authorized to make such further order as shall be required to carry the decree into effect.

Provisions similar to those in section 19 have been enforced in this State ever since 1827. (Rev. Code of 1827, p. 88; ibid. 1833, p. 118; Rev. Stat. 1845, chap. 21, sec. 15.) Said acts, including section 19 of the present Chancery act, have been construed at all times by this court to the effect that a decree entered against a non-resident defendant served by publication is provisional, interlocutory and conditional and not final or conclusive, and the decisions show that it was not the intention of any of those acts that such defendant should be condemned without being heard, or that he should lose any rights guaranteed him under the law when he makes proper application to answer and to be heard. (*Southern Bank of St. Louis* v. *Humphreys*, 47 Ill. 227; *Seymour* v. *Bailey*, 66 id. 288; *Martin* v. *Gilmore*,

72 id. 193; *Methodist Episcopal Church* v. *Field,* 135 id. 112; *Smith* v. *Hunter,* 241 id. 514; *First Congregational Church* v. *Page,* 257 id. 472; *Harter* v. *Kernochan,* 103 U. S. 562.) This court has also held that until finally confirmed under such a proceeding as the present one, or until three full years have expired after the entry of the decree, the decree is simply provisional or interlocutory and not final; that the Statute of Limitations does not begin to run until three years have expired, and that a defendant may prosecute a writ of error or a bill to impeach the decree within the time allowed by law, counting from the time the three years allowed to defend had expired. (*Lyon* v. *Robbins,* 46 Ill. 276; *Sale* v. *Fike,* 54 id. 292.) This court also held in *Scott* v. *Milliken,* 60 Ill. 108, which was a suit in foreclosure, that where a mortgagor who is a non-resident and not served by publication applies to the court within the three years and is given leave to answer, he occupies the same position in the case as though he had been personally served and was defending in the first instance, and that the decree originally rendered on his default in nowise affects his rights on the trial on his answer. It was further held that the defendant may demur to the bill if substantial defects appear therein, and may also file a cross-bill if that appears necessary to obtain any affirmative relief to which he is entitled. It was also squarely held in that case that such defendant has the same right to redeem the mortgaged premises that he would have had if he had been personally served with process and had appeared and defended before the decree was rendered, although Milliken had become vested by the court's decree with the title to the mortgaged property.

Appellants had a right to an accounting and to have the rents collected and applied to the cancellation of the indebtedness due complainant and Lena Rosenthal, and to the payment of any interest accruing on the deferred liens of the holders of notes 11 and 12 and paid by complainant or

by Lena Rosenthal or by Mrs. Behrens. It may be that there will be nothing due from appellants after the application of all the rents, and particularly if they make good their defense under the original bill. Appellants should be required, in addition to paying the indebtedness or the amount required to redeem, to pay whatever costs in the original proceedings equity may require. . In this case the decree, the sale and the final report of deed cannot be confirmed, under the conditions found in the record, for want of a proper bill of complaint and necessary proofs, as already stated. Therefore there will have to be a further hearing on a proper bill and answer and on the cross-bill and answer, and a new decree be entered for any amount that may be found due from appellants after the accounting, as aforesaid, and a reasonable time given them to pay said sum and an opportunity to redeem the premises in case of re-sale. If nothing should be found due from appellants after proper accounting, the liens for the first ten notes and for any accrued interest paid on notes 11 and 12 should be found by the decree to be discharged and the sale and deed canceled, if a proper cross-bill be filed asking for such relief. Mrs. Behrens should be allowed to prosecute the suit in the name of the Northern Trust Company, executor, and to amend the original bill, if she shall be advised so to do.

The decree of the superior court is reversed and the cause remanded for further proceedings consistent with the views herein expressed, with directions to allow both parties the right to amend or to file such further pleadings in the case as shall appear necessary to a full and fair adjustment of all the equities between the parties, as they may be advised.     *Reversed and remanded, with directions.*